IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

UNITED STATES OF AMERICA

VS.                                           CRIMINAL CASE NO. 2:11-CR-00038-NBB-DAS

RAYMOND LAMONT SHOEMAKER,
EARNEST LEVI GARNER, JR., and
ROBERT CORKERN

**MEMORANDUM OPINION**

Presently before the court is defendant Earnest Levi Garner, Jr.'s motion to sever. Defendant Garner argues that the indictment misjoins the defendants and the offenses in violation of Fed.R.Crim.P. 8. Garner also argues that joinder is prejudicial and that the court should sever the counts against him from the remaining counts pursuant to its authority under Fed.R.Crim.P. 14. Having reviewed the memorandums, the record, and applicable law, the court is ready to rule.

Factual and Procedural Background

The indictment in this case charges three defendants, Raymond Lamont Shoemaker, Earnest Levi Garner, Jr., and Robert Corkern, with criminal acts involving Tri-Lakes Medical Center (TLMC), a hospital in Batesville, Mississippi, that was owned by Panola County and the City of Batesville, and which was sold to a private non-profit entity (PSHG) in November 2005. The hospital thereafter operated as PSHG d.b.a. TLMC. Defendant Corkern recently pleaded guilty to Count 13 of the indictment (federal programs bribery, 18 U.S.C. § 666), which charged that he paid a bribe of $25,000.00 to David Chandler, the County Administrator for Panola County, to ensure that $400,000.00 in funds was transferred to PSHG d.b.a. TLMC.

Only the fourteenth count of the indictment does not involve the TLMC or PSHG d.b.a. TLMC. Count fourteen charges defendant Shoemaker with embezzlement from Humphreys County

Memorial Hospital in Humphreys County, Mississippi. Even though the defendant Shoemaker has not requested a severance of this count, the Government states in its response to Garner's motion to sever that Count Fourteen should be severed and separately tried.[1] The court hereby grants the severance of Count Fourteen.

The remaining counts of the indictment, counts one through twelve, allege various crimes related to two separate schemes involving TLMC and TLMC d.b.a. PSHG. The defendant Shoemaker is alleged to have taken part in both schemes.

Counts one through seven allege a nursing services kickback scheme involving defendants Shoemaker and Garner that occurred from March 2005 until July 2007. Defendant Garner is charged in four of first seven counts.[2] Garner is alleged to have paid approximately $268,000.00 in kickbacks and bribes in order to increase the hospital's use of nursing services companies owned by him.

Counts eight through twelve of the indictment allege a scheme involving defendants Shoemaker and Corkern occurring November 15, 2005, through April 10, 2006, to make false statements to the United States Department of Agriculture in order to obtain a $4 million dollar line of credit. Defendants Shoemaker and Corkern are alleged to have represented to the USDA that the line of credit was to be used exclusively to finance the day-to-day operations of the hospital, when

---

[1] The Government's memorandum states: "The Government recognizes that Count 14 involves the Humphreys County Hospital and that, as set forth below, Count 14 should be severed from the remaining counts. The Government notes, however, that evidence pertaining to Count 14 may be arguably admissible at trial against defendant Shoemaker, pursuant to Rule 404(b) with limiting instructions from the Court."

[2] Garner is charged with conspiracy to commit federal programs bribery (18 U.S.C. §§ 371, 666), federal programs bribery (18 U.S.C. § 666), conspiracy to commit healthcare fraud (18 U.S.C. § 371, 42 U.S.C. § 1320a-7b), and healthcare fraud (42 U.S.C. § 1320a-7b).

in fact, their true intentions were to use approximately $500,000.00 of the line of credit for their own personal benefit. Count Twelve charges defendant Shoemaker with embezzling $250,000.00 from PSHG d.b.a. TLMC.

Defendant Garner, the movant, is not named in counts eight through twelve and is not alleged to have been involved in or to have known about the scheme involving the $4 million dollar line of credit. Garner argues that the counts against him and Shoemaker alleging a nursing services kickback scheme (counts one through seven)[3] should be tried separately from the counts against Shoemaker and Corkern alleging a scheme involving the line of credit (counts eight through twelve). Garner argues the indictment improperly charges defendants that did not "particpate[] in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). Garner alternatively argues that his trial will be compellingly prejudiced because the jury will be "tainted by evidence" submitted to support charges unrelated to him and unable "to segregate the evidence applicable only to Mr. Garner and to follow the instructions as they apply individually to Mr. Garner."

The Government opposes Garner's motion to sever, arguing that this case involves a common scheme or plan "by the various defendants and other, unindicted co-conspirators, to embezzle, steal, and otherwise illegally profit from their association with Tri-Lakes Medical Center (TLMC)." The Government states that the "central figure in the indictment is Shoemaker, the CEO of TLMC, but there are multiple defendants and witnesses common to each count." The Government alleges that "Shoemaker and others associated with TLMC operated the hospital in such

---

[3]Garner argues that counts one through five should be severed from the remaining counts, but counts six and seven also arise from the alleged nursing services kickback scheme.

3

a way as to corruptly strain every dollar of profit out of the hospital, resulting in the default on a $27 million loan used to purchase the hospital and the subsequent bankruptcy of TLMC."

The Government states that "[s]everal witnesses will offer testimony that is common to all counts, including testimony concerning the organization of the hospital, Shoemaker's role in the administration of the hospital, and the Board of Director's lack of knowledge or approval of the various payments set forth in the indictment. Co-defendant Corkern, who recently entered into a plea agreement, is also expected to be called as a Government witness in relation to charges against both Shoemaker and Garner."

Law and Analysis

Defendant Garner's motion requires a two-part inquiry: (1) does the indictment meet the requirements of Fed.R.Crim.P. 8 for joinder? and (2) if properly joined, should the court nevertheless sever the trial pursuant to Fed.R.Crim.P. 14(a) due to unfair prejudice against Garner? Each determination is governed by a different standard of review.

**A.      Improper Joinder**

Rule 8 of the Federal Rules of Criminal Procedure states:

> **Rule 8.  Joinder of Offenses or Defendants**
>
> (a) **Joinder of Offenses.**  The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b) **Joinder of Defendants.**  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All

defendants need not be charged in each count.

Subsection 8(a) applies only when a single defendant is involved and subsection 8(b) applies only to cases involving multiple defendants. *United States v. Park,* 531 F.2d 754, 760 n.4 (5th Cir. 1976).

"Misjoinder under Rule 8 is a matter of law, which is completely reviewable on appeal; but Rule 8 is to be broadly construed in favor of initial joinder." *United States v. Fortenberry,* 914 F.2d 671, 675 (5th Cir. 1990). "The granting of a motion for severance, where there has been misjoinder, is mandatory and not discretionary." *United States v. Marionneaux,* 514 F.2d 1244, 1248 (5th Cir. 1975), *cert. denied sub nom. Partin v. United States,* 434 U.S. 903 (1977). *See, United States v. Lane,* 474 U.S. 438, 449 n.12 (1986)("Rule 8(b) . . . requires the granting of a motion for severance unless its standards are met, even in the absence of prejudice."). "Generally, the propriety of joinder under Rule 8 is to be judged from the allegations of the indictment, which for these purposes are assumed to be true." *United States v. Chagra,* 754 F.2d 1186, 1188 (5th Cir. 1985).

"The general rule is that defendants are to be tried together if their indictments arose out of a common set of circumstances, even if there is a disparity in the quantum of evidence." *United States v. Hogan,* 763 F.2d 697, 705 (5th Cir. 1985), *opinion withdrawn on other grounds*, 771 F.2d 82 (5th Cir. 1985). Joinder of multiple defendants is proper if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b). "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *United States v. Park,* 531

F.2d 754, 761 (5th Cir. 1976). Construing the word "transaction" as used in Rule 8 "involves the balancing of conflicting interests: (1) speed, efficiency, and convenience in the functioning of the federal judicial machinery; against (2) the right of the accused to a fair trial, without any substantial prejudice to that right occasioned by the joinder of offenses and/or defendants.'" *Id.* (citing *Cateneo v. United States,* 167 F.2d 820, 823 (4th Cir. 1948).

"Separate conspiracies with different memberships may still be joined if they are part of the same series of acts or transactions." *United States v. Welch,* 656 F.2d 1039, 1049 (5th Cir. 1981). *See, United States v. Toro,* 840 F.2d 1221, 1238 (5th Cir. 1988)(same); *United States v. Grassi,* 616 F.2d 1295, 1303 (5th Cir. 1980)(same). "Whether or not separate offenses are part of a 'series of acts or transactions' under 8(b) depends . . . on the relatedness of the facts underlying each offense. . . . When the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper." *Welch*, 656 F.2d at 1049. "When there is no 'substantial identity of facts or participants between the two offenses, there is no 'series' of acts under Rule 8(b).'" *Id.* "It is clear that defendants charged with two separate albeit similar conspiracies having one common participant are not, without more, properly joined. *See United States v. Nettles,* 570 F.2d 547, 551 (5th Cir. 1978) ("When, as here, the connection between different groups is limited to a few individuals common to each but those individuals commit separate acts which involve them in separate offenses with no common aim, then the requisite substantial identity of facts or participants is not present.")(emphasis added); *Marionneaux,* 514 F.2d at 1248-49. Clearly, similarity of acts alone is insufficient to indicate that a series of acts exists." *Id.*

Here, the court is not faced with one common participant in two alleged conspiracies and

nothing more. In addition to an overlapping member, Shoemaker, the two alleged conspiracies and related underlying substantive charges also have an alleged common objective, to illegally profit from TLMC and PSHG d.b.a. TLMC. The conspiracies are substantially interrelated by facts because they involve the same hospital, they overlap in time,[4] and Shoemaker is an alleged participant in both. Separate trials would be duplicative in part because proving both conspiracies requires testimony concerning the background, organization, and administration of the hospital. In addition to common witnesses related to the hospital, the Government states that defendant Corkern will be a common witness and testify regarding both conspiracies. The two separate conspiracies and associated substantive crimes are unified by a substantial identity of facts and participants and arise out of a common plan or scheme. A joint trial of all claims is permitted under Fed.R.Crim.P. 8(b).

**B.    Prejudicial Joinder**

Rule 14 of the Federal Rules of Criminal Procedure states:

> **Rule 14.  Relief from Prejudicial Joinder**
>
> (a) **Relief.**  If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendant's trials, or provide any other relief that justice requires.
>
> (b) **Defendant's Statements.**  Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to introduce as evidence.

---

[4]The nursing services kickback scheme involving defendants Shoemaker and Garner is alleged to have occurred from March 2005 until July 2007. The scheme involving the line of credit and defendants Shoemaker and Corkern is alleged to have occurred from November 15, 2005, through April 10, 2006.

"To promote judicial economy, and the interests of justice, the federal system prefers joint trials of defendants who are properly charged in joint indictments." *United States v. Daniels,* 281 F.3d 168, 177 (5th Cir. 2002). Despite this preference, Fed.R.Crim.P. 14 permits severance where joinder will seriously prejudice a defendant. "[I]f the joinder of defendants for trial appears to prejudice a defendant, the court may sever the defendant's trials or provide any other relief that justice requires." *United States v. Mitchell,* 484 F.3d 762, 775 (5th Cir. 2007). The Supreme Court has stated that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539 (1993). "Clear prejudice may result when the jury is unable to separate the evidence and apply it to the proper offenses, or where the jury might use the evidence of one of the crimes to infer criminal disposition to commit the other crimes charged." *Fortenberry,* 914 F.2d at 675. "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Mitchell,* 484 F.3d at 775.

"The granting or refusing of a severance is within the court's discretion," *Schaffer v. United States,* 221 F.2d 17, 19 (5th Cir. 1955). "Reversal is warranted only when the defendant demonstrates that the denial resulted in compelling prejudice against which the trial court was unable to afford protection." *United States v. Mikolajczyk,* 137 F.3d 237, 240-41 (5th Cir. 1998).

"In deciding a motion for severance, the district court must balance the potential prejudice to the defendant against the public interest in joint trials where the case against each defendant arises from the same general transactions." *United States v. Berkowitz,* 662 F.2d 1127,

1132 (5th Cir. 1981). "The judgment of the district court in assessing this balance will not be disturbed absent an affirmative showing of abuse of discretion." *Id.*

The Fifth Circuit has addressed Garner's argument of "spillover" or "cumulative" prejudice, i.e., that evidence relating to other defendants will "spill over," confuse the jury, and prevent a fair trial of the defendant. The "mere presence of a spillover effect does not ordinarily warrant severance." *United States v. Sparks,* 2 F.3d 574, 583-84 (5th Cir. 1993). *See, United States v. Krout,* 66 F.3d 1420, 1430 (5th Cir. 1995)("neither a quantitative disparity in the evidence nor the presence of a spillover effect requires a severance."). "That certain defendants might have had a better chance of acquittal if tried separately does not establish their right to a severance under Rule 14." *United States v. Scott,* 555 F.2d 522, 531 (5th Cir. 1977), *cert. denied,* 434 U.S. 985 (1977). The Fifth Circuit has stated: "The pernicious effect of cumulation . . . is best avoided by precise instructions to the jury on the admissibility and proper uses of the evidence introduced by the Government." *United States v. Morrow,* 537 F.2d 120, 136 (5th Cir. 1976), *cert. denied,* 430 U.S. 956 (1977). "The remedy of severance is justified only if the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction." *Id. See, United States v. Whitfield,* 590 F.3d 325, 356 (5th Cir. 2009)(explicit instructions to the jury to consider each offense separately and each defendant individually is "generally sufficient to prevent the threat of prejudice resulting from unsevered trials."); *United States v. Loalza-Vasquez,* 735 F.2d 153, 159 (5th Cir. 1984)(limiting instruction cured prejudicial effect of similar offense evidence introduced against some defendants); *United States v. Avarello,* 592 F.2d 1339, 1346 n. 10 (5th Cir. ), *cert. denied,* 444 U.S. 844 (1979)(precise instructions obviated spillover effect); *United States v. Michel,* 588 F.2d 986, 1002-03 (5th Cir.

9

1979).

This case simply is not one where the risk that the jury will not, or cannot, follow instructions is so great that it outweighs the interest in judicial economy served by a joint trial. Defendant Garner has set forth no argument why any prejudice which might arise from a joint trial could not be cured by proper instructions to the jury to consider each offense separately and each defendant individually. There is no reason to believe that the jury will not be able to follow the court's limiting instructions and judge those acts and defendants charged in Counts One through Seven independently of the allegations that they will consider in connection with Counts Eight through Twelve.

Defendant Garner's motion to sever is hereby DENIED. Count Fourteen, as noted, is hereby severed. A separate order in accord with this opinion shall issue this day.

Ordered and adjudged this, the 27th day of January, 2012.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
U.S. DISTRICT JUDGE