# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI


**UNITED STATES OF AMERICA**

**V.**                                              **CASE NO.: 2:11-CR-00038-NBB-DAS**

**EARNEST LEVI GARNER, JR.,**
**a.k.a. "LEE GARNER" and**
**RAYMOND LAMONT SHOEMAKER,**
**a.k.a. "RAY SHOEMAKER"**                                    **DEFENDANTS**

## <u>MEMORANDUM OPINION</u>

Presently before the court are Defendant Lee Garner's Motion for Judgment of Acquittal **[141]** or Alternatively, Motion for a New Trial **[142]** and Defendant Ray Shoemaker's Motion for Judgment of Acquittal, or Alternatively, For New Trial **[145]**.  Upon due consideration of the motions and responses, the court is ready to rule.

### Procedural Background

Defendants were initially indicted on February 24, 2011, and subsequently pleaded not guilty to all counts.  On September 21, 2011, the grand jury returned a fourteen count superseding indictment against co-defendants Earnest Levi Garner, Jr. (a.k.a. "Lee Garner"), Raymond Lamont Shoemaker (a.k.a. "Ray Shoemaker"), and Robert S. Corkern charging, *inter alia*, violations of 18 U.S.C. § 371, 18 U.S.C. § 666, and 18 U.S.C. § 1320a-7b.[1]  The charges involved a hospital in Batesville, Mississippi, known as Tri-Lakes Medical Center.  Defendant Shoemaker was indicted on eleven of the counts and pleaded not guilty on October 5, 2011.  Defendant Garner was indicted on four of the counts and pleaded not guilty on October 7, 2011.

---

[1] Corkern pleaded guilty to one count of violating 18 U.S.C. § 666(a)(2) on January 9, 2012.

1

After careful consideration of the motions, the memoranda supporting and opposing the motions, and the relevant case law, the court is of the opinion that the motion by Garner for judgment of acquittal on Counts One, Two, Four and Five should be granted, the motion for judgment of acquittal by Shoemaker on Counts One and Four should be granted, the motion by Garner alternatively for a new trial on Counts One, Two, Four, and Five should be granted, the motion by Shoemaker for a new trial on Counts One, Three, and Four should be granted, and the motions for judgment of acquittal and new trial on all other counts should be denied.

**Count One** alleges that Defendant Lee Garner knowingly and willfully conspired with Ray Shoemaker and David Chandler to violate 18 U.S.C. § 666 by offering something of value to David Chandler to influence nurse staffing services ordered by Tri-Lakes from Garner's business, in violation of 18 U.S.C. § 371.[2] Count One further alleges the existence of another conspiracy between Garner, Shoemaker, and Chandler wherein Garner allegedly offered to pay Shoemaker $25,000 in exchange for Shoemaker's influence over the ordering of nursing services for Garner's company. This second agreement allegedly originated in November 2005 at a meeting arranged by Chandler at the Como Steakhouse, where the three had dinner. The indictment alleges that Chandler paid Shoemaker $12,000 in furtherance of this conspiracy.

**Count Two** charges Garner with violating 18 U.S.C. § 666 by paying Chandler through his agreements with Chandler and Shoemaker to obtain business for his nursing staffing company, the substantive acts of the conspiracy charge.

---

[2] Chandler was not charged in the indictment. Chandler has since pleaded guilty to a two-count information. *See* Case No. 2:11-CR-134-SA-JMV. The information did not include a conspiracy charge or any charge relating to Tri-Lakes Medical Center.

2

**Count Three** alleges that Shoemaker received money from Chandler for the purpose of influencing nursing services and the timely payment for those services for Garner's company, in violation of 18 U.S.C. § 666.

**Count Four** charges that Garner and Shoemaker conspired with Chandler to offer a kickback or bribe in return for arranging for the purchase of nursing services, in violation of 18 U.S.C. § 371. Count Four is premised on the same allegations described in Count One.

In **Count Five**, Garner is charged with healthcare fraud through offering and paying Chandler for the purpose of inducing him to order a service that is paid under a federal health care program, in violation of 18 U.S.C. § 1320a-7b. Count Five incorporates the conspiracy allegations from Counts One and Four of the indictment.

The court held a nine day trial beginning February 21, 2012, as to Defendants Garner and Shoemaker. At the conclusion of the government's proof, both defendants moved for a judgment of acquittal, which this court denied. At the conclusion of all the evidence, the defendants renewed their motions for judgments as a matter of law, which the court also denied. The jury found both Garner and Shoemaker guilty on all counts, and the defendants filed their motions now before the court for judgment of acquittal, or alternatively, a new trial.

## Factual Background

Defendant Garner was the owner of a nursing service business, Guardian Angel, which provided temporary nurses to hospitals in the area when called by the nursing staffers of the hospitals when they needed extra temporary nurses.

At the time of Garner and Chandler's agreement, Chandler was the Panola County administrator as well as the Tri-Lakes hospital board president. Ray Shoemaker was the Chief

Operating Officer and later, the Chief Executive Officer of Tri-Lakes. The indictment alleges that Chandler used his positions to influence Shoemaker to order nursing service business from Garner's company, Guardian Angel.

The government's case investigator testified before the grand jury that Garner readily admitted paying Chandler five dollars for every hour that Guardian Angel's nurses worked at the hospital. The agent testified that Garner viewed it as an above board transaction and saw nothing wrong with it, and there is no dispute to that testimony.

It is undisputed that neither Tri-Lakes Medical Center nor Medicare/Medicaid lost any money as a result of these alleged schemes, and that Tri-Lakes received competent nursing services for all monies paid Guardian Angel, Garner's business.

Based on the reasons cited below, the court finds that the motions for judgment of acquittal must be granted as to Counts One, Two, Four, and Five, and denied on the remaining counts.

## Motions for Judgment of Acquittal

### Standard of Review

Defendants first renew their motions for a judgment of acquittal pursuant to Federal Rules of Criminal Procedure 29. "A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005) (quoting *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998)); *see also* Fed. R. Crim. P. 29(a). "In determining if there was sufficient evidence to support a conviction, the 'relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"

*United States v. Xu*, 559 F.3d 452, 453 (5th Cir. 2010) (quoting *United States v. Valle*, 538 F.3d

341, 344 (5th Cir. 2008)).

### The Conspiracy Counts One and Four:   18 U.S.C. § 371

Count One charges Garner and Shoemaker with conspiracy to violate 18 U.S.C. § 666,

while Count Four charges Garner and Shoemaker with conspiracy to violate 18 U.S.C. § 1320a-

7b.   The two counts are premised on the same facts.   The court instructed the jury that for

Defendants to be found guilty of conspiracy as to Count One, the government was required to

prove that each made an agreement with at least one other person to commit acts which violated

18 U.S.C. § 666, and as to Count Four, that each made an agreement with at least one other

person to commit acts which violate 18 U.S.C. § 1320a-7b.

### Garner's Alleged Agreement to Pay Chandler

<u>Count One</u>

The indictment alleges that Garner and Chandler made an agreement in May 2005

wherein Garner would pay Chandler $5 for every nursing hour that Garner's nurse staffing

company worked at Tri-Lakes.   There is no dispute that Garner and Chandler made such an

agreement.

The court instructed the jury that in order to find Defendant Garner guilty of violating 18

U.S.C. 666, the government was required to prove each of the following elements beyond a

reasonable doubt:

> *First*: That Lee Garner knowingly gave, offered, and agreed to give
> something of value with intent to influence or reward David Chandler;

> ***Second*: That the recipient or intended recipient of something of value
> that is, David Chandler, was an agent of a state or local government, as
> charged;**

5

> *Third*: That during any one year period, Tri-Lakes Hospital received benefits in excess of $10,000 under a Federal program involving some form of Federal assistance;
>
> *Fourth*: That by giving, offering, and agreeing to give something of value, Lee Garner intended to influence and reward David Chandler in connection with Guardian Angel and On-Call Staffing.[3]

Jury Instruction No. D-16 (emphasis added).[4] The court also instructed the jury on the statutory definition of agent in Jury Instruction No. D-18:

> Section 666 describes the term "agent" as follows:
>
> the term "agent" means a person authorized to act on behalf of another person or government, includes a servant or employee, and a partner, director, officer, manager, and representative.

The government presented no evidence that Chandler was an agent of Tri-Lakes, as that term is defined in the statute and interpreted in case law by the Fifth Circuit and other courts. Indeed, it appears the government would have been unable to do so even if attempted.

If the court were to accept the government's argument that any person who happened to hold one of the titles stated in the statutory definition of agency, i.e. employee, officer, etc., was an agent for purposes of § 666, the result would be illogical, as has been pointed out by the Fifth Circuit and other courts. As noted by the Fifth Circuit, the Second Circuit has reaffirmed that even after the Supreme Court's decision in *Salinas v. United States*, 522 U.S. 52 (1997), overruling *United States v. Foley*, 73 F.3d 484 (2d Cir. 1996), "*Foley* would not permit the Government to use § 666(a)(1)(B) to prosecute a bribe paid to a city's meat inspector in connection with a substantial transaction just because the city's parks department had received a

---

[3] During the relevant time period, Garner changed the name of his company to On-Call Staffing.

[4] There is no dispute that Tri-Lakes yearly receives in excess of $10,000 of federal funds.

federal grant of $10,000." *United States v. Phillips*, 219 F.3d 404, 414 n.16 (5th Cir. 2000) (quoting *United States v. Santopietro*, 166 F.3d 88, 93 (2d Cir. 1999) (abrogated on other grounds)). The statutory requirement of agent under § 666 therefore does not include every employee or each individual board member, as argued by the government here. *See id*.

The government argues on this point that merely because Chandler was a board member of the hospital and an employee of the county which owned the hospital, that the requirements of the statute are fulfilled. This broad view espoused by the prosecution on the definition of "agent," however, does not rise to the level of involvement required to meet the logical view of agency required by *United States v. Phillips* and other cases. *Id*.; *see also United States v. Westmoreland*, 841 F.2d 572 (5th Cir. 1988). Although Chandler, through his role of board member, could have had some influence with the employees of the hospital, that does not suffice to meet the required elements of § 666 because he had no control over the legal transactions of Tri-Lakes in ordering nursing services.

In *Phillips*, the defendant was the elected and serving Tax Assessor for St. Helens Parish in Louisiana. He hired a friend, Emerson Newman, and Newman's wife, Jean, to work as employees of the Tax Assessor's office so that the pair could be covered by the parish's health care group insurance plan. The government contended the pair did little or no work for their $800.00 a month pay. The couple while so employed received salary and insurance benefits totaling approximately $200,000.00.

The Fifth Circuit, in reversing the conviction, pointed out that Phillips was without question an "employee" of the Parish and analyzed the issue of whether Phillips was an agent of the Parish for purposes of § 666. *Phillips*, 219 F.3d 404. The trial court had instructed the jury

that Phillips could be convicted if it found that he was authorized to act on behalf of the Parish and that "under Louisiana law, tax assessors are parish officers." *Id*. at 411. The government argued to the jury and the Fifth Circuit that the Parish is a governmental agency and the Tax Assessor is an agent of that governmental agency.

In rejecting the government's argument, the court held that for purposes of § 666, Phillips was not an agent, as he had no authorization to act on behalf of the Parish with respect to the funds misappropriated. *Id*. at 415. Likewise in the case at bar, Chandler was not shown to have any authority to act on behalf of the hospital in determining which nursing service providers would be called to supply temporary nursing services to fulfill the hospitals' day-to-day needs. The *Phillips* court held that under § 666 an agent must "have authority to effect the significant transactions" of the principal. *Id*. at 411 n.7 (quoting *Westmoreland*, 841 F.2d at 578). Here, that would mean the authority to order temporary nurses from providers, such as Guardian Angel, on a day-to-day as-needed basis.

The court went on to note that since Phillips was not an agent, his actions could not have threatened the integrity of the organization's federal funds. *Id.* at 413 n.14 (citing *United States v. Fischer*, 168 F.3d 1273, 1276 (11th Cir. 1999), *aff'd*, 529 U.S. 667 (2000)).

The government failed to provide any evidence on the second element in instruction D-16, *supra*. The motions of the defendants for judgment of acquittal on Count One therefore are granted.

Furthermore, on Counts One and Four, the testimony of the government investigating agent before the grand jury was that Garner raised his charges to the hospital by five dollars an hour to cover the payment to Chandler. The court presumes that the indictment was at least

8

partially based on this evidence. That testimony was shown at trial to be false. There was no evidence that Defendant Garner charged the hospital any higher rate than he charged other hospitals, or a higher rate to Tri-Lakes than was charged before Chandler entered the picture. *A fortiori*, there was testimony that Garner's business charged Tri-Lakes lower rates than some of his competitors charged this hospital. Neither was there evidence that Garner padded any of his bills to the hospital. As admitted by the government, the hospital received full and competent nursing services for each dollar it paid Garner's company. Further, there was no evidence that Garner's arrangement with Chandler could have or did affect the integrity of the funds. The employees of the hospital who determined how many and what type nurses were to be called for temporary duty all testified that no one told them what providers to call, nor did anyone put any pressure on them to call Garner over any other nursing services providers. There was no evidence to the contrary.

The evidence further pointed out that Chandler could not individually bind the hospital through his role as hospital board president; rather, Chandler was one member of a five-person board. The extent of Chandler's authority was his ability to vote as one member, as the board speaks and issues decisions only through its minutes. The government argues that Chandler procured a raise for Shoemaker through his role as board president as proof of his ability to influence; however, the hospital board held the ultimate decision-making authority and could either accept or reject the proposed raise, all of which was undisputed and shown by the government's chief witness, Chandler, below, and as verified by other board members.

Attorney:     And you know that as board chairman, you can't influence
              one hour [of nursing services], can you?

Chandler:     I cannot.

Trial Tr. of Michael David Chandler, at 222-23.

Section 666 requires that the person who receives the money from the defendant bribe-payer must be an agent of the institution – here the hospital.  When Defendant Garner asked Chandler, who was a long-time accounting employee of Garner's business, to assist in obtaining a nursing services contract for Guardian Angel, Chandler set up a meeting for a Guardian Angel employee with Ray Shoemaker, the CEO of Tri-Lakes; however, the meeting arranged by Chandler failed to result in a contract for Garner.  As Defendant Garner points out, Chandler obviously had no decision-making authority on which nursing service company would be used by Tri-Lakes.

A later meeting was set up between Shoemaker and a different representative of Guardian Angel.  Guardian Angel eventually entered into a contract with Tri-Lakes to provide nursing services; however, Chandler had no part in the contract negotiation, and there was no evidence that he ever spoke with the nursing supervisors at the hospital who ordered nursing services from the several providers in the area, or that he had any authority to order whom would be called or how they would be paid.

Chandler was further not an agent of Tri-Lakes through his position as county administrator.  While Panola County owned Tri-Lakes, there is no evidence that the county performed any oversight or authority over the day-to-day operations of the hospital with respect to its funds or the hiring of nursing service providers.  This lack of control is consistent with a finding that Chandler was not an agent for purposes of § 666.  *See Phillips*, 219 F.3d at 415; *see also United States v. Ferber*, 966 F. Supp. 90, 100 (D. Mass. 1997).

Four hospital employees described the process of obtaining nurse staffing services to fill schedules. Each of these employees who testified was a staff coordinator at the hospital whose responsibility was to fill nursing slots in a particular department. All four of these employees were emphatic that no person attempted to nor did influence the method by which nursing services were obtained. The testimony was that no federal investigator ever looked into or even talked to the staffers about how they decided what providers to call for nursing services.

Ignoring the requirement of agency as explained in *Phillips*, and arguing that Chandler's titles as board president and county administrator were sufficient to satisfy the requirement of agency, the government argues that proof of Chandler's power to control selection over what nursing service providers were called was shown by the amount of business that Guardian Angel received. Testimony showed that Defendant's company at one time staffed approximately forty percent of the temporary nurses needed at Tri-Lakes. According to the testimony, during the relevant time period, approximately five to seven nursing staffing agencies had contracts with Tri-Lakes. The nursing staff of Tri-Lakes explained the reason for this apportionment of services. Melissa Meek-Phelps, an overall scheduler for the hospital between 2005 and 2007, testified that if Guardian Angel received more business it was because that agency had the types of nurses available for the shifts that were needed and responded promptly to the calls. Phelps further testified that the first agency to return the call to the nursing staffer was the agency the staffer hired.

The nursing staffers also explained other reasons of how the nursing services providers were hired. One of the staffing agencies, PrimaCare, a competitor of Garner, stopped providing nurses to Tri-Lakes because of the hospital's non-payment of PrimaCare's invoices. Deborah

Beavers, a staffing nurse, testified that in 2005 local physicians began referring more patients to Tri-Lakes which caused an increase in the "census."[5]

In summary, the evidence was that Chandler was not an agent of the hospital as required for federal jurisdiction of a local crime under § 666 and the relevant case law. *See Phillips*, 219 F.3d at 415. Chandler was not an agent of the hospital, was not authorized to affect the day-to-day hiring of temporary nurses, and moreover, there is no evidence that he did. Chandler, already a part-time employee of Garner, was the person who came to Garner and asked for payment for his time in attempting to get more business for Garner and was the person who went to the hospital administrator to seek business, yet Chandler has never been charged as a conspirator. The government argues that just because Chandler was an individual member of the hospital board and an employee of the county, and therefore could have some influence, the agency requirement of § 666 is met, yet the Fifth Circuit and other courts have stated clearly that this is not so. For these reasons, Defendants' motions must be granted as to Count One.

Count Four

In Count Four, the government also charged Garner and Shoemaker with conspiracy to violate 18 U.S.C. § 1320a-7b, the Healthcare Fraud Statute, which provides, in pertinent part, that:

> (2) whoever knowingly and willfully offers or pays any remuneration (including any kickbacks, bribes, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person -
> . . .
>
> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or

---

[5] "Census" refers to the number of patients that were in the medical/surgical unit at the hospital. The need to call a staffing agency depended on census and acuity, or how ill each patient was at the time.

ordering of any foods, facility, service, or item for which payment may be made in whole or in part under a Federal health care program . . . shall be guilty of an offense against the United States.

18 U.S.C. § 1320a-7b(3)(B).

As discussed *supra* in relation to § 666, Chandler did not have the authority to act on behalf of the hospital in "ordering" nurse staffing business. The Fifth Circuit has held that under a reading of section 1320a-7b, the payment for services must be made to a "relevant decision maker" with respect to the services for which an alleged kickback is paid. *United States v. Miles*, 360 F.3d 472, 480 (5th Cir. 2004). While *Miles* interpreted Subsection A of the statute and Garner is charged under Subsection B, the subsections simply "refer to the difference between the referral of individuals and the recommendation of specific services." *Id.*, n.3 (quoting *United States v. Polin*, 194 F.3d 863, 865-67 (7th Cir. 1999)). Thus, *Miles* is instructive as to Defendants' charge in Count Four.

It is undisputed that Chandler had no decision-making authority in regard to the actual procurement of nursing staff. Since Chandler, the recipient of Garner's payments, was not a relevant decision maker in the area of the charged offense, the agreement with Garner did not violate § 1320a-7b, and the motions for judgment of acquittal on Count Four must be granted as to both defendants.

### The Second Conspiracy:

### Garner's Alleged Agreement to Pay Shoemaker

The indictment further charges in Counts One and Four that a second conspiracy was formed through an alleged agreement between Shoemaker and Garner wherein Garner allegedly offered Shoemaker $25,000 in exchange for Shoemaker's influence over the ordering of nursing

services.

The origin of this second alleged conspiracy, according to Chandler, occurred at Como Steakhouse in November 2005, where Chandler, Garner, and Shoemaker went for dinner. Chandler testified that while he was present for the majority of the meeting, Garner and Shoemaker discussed increasing the nursing hours at Tri-Lakes, but there was no mention of money. Chandler testified that prior to the three leaving the restaurant, he left the table. Chandler estimated that Garner and Shoemaker met privately for thirty minutes. Chandler testified he never heard Garner or Shoemaker communicate an offer or solicitation regarding payment for nursing service hours. Chandler further testified he never learned of the substance of Garner and Shoemaker's private discussion.

The only evidence presented by the government of an alleged conspiracy between Garner and Shoemaker was through the testimony of David Chandler. Chandler testified as follows:

| | |
|---|---|
| Attorney: | All right. And let me draw your attention to 2006. Do you recall a series of checks that you wrote to him [Ray Shoemaker]? |
| Chandler: | I do. |
| Attorney: | Do you recall the total amount? |
| Chandler: | $ 12,000. |
| Attorney: | And just very briefly, why did you give him that money? |
| Chandler: | It was requested or I – it was requested – I felt like I needed to do that to – for an obligation that was due. |
| Attorney: | All right. And who asked to be – who asked to be paid? |
| Chandler: | Ray [Shoemaker] asked me back in December for the deal to be taken care of. |
| Attorney: | How much money did he want? |

| | |
|---|---|
| Chandler: | $ 25,000. |
| . . . | |
| Chandler: | Ray [Shoemaker] made the statement that, "I don't know what's going on, but I've held up the end of my deal, but I am not getting – that Lee [Garner] hadn't held up the end of his deal." |
| . . . | |
| Attorney: | Did Shoemaker indicate what his end of the deal was? |
| Chandler: | To increase hours at the hospital. |

Trial Tr. of Chandler, at 54-55.

Chandler testified that after this exchange with Shoemaker he approached Garner and inquired about the "deal," but Garner denied any such deal. Chandler stated he told Garner "I'm going to see if he will take $2,000 a month." *Id*. at 57. Chandler testified that Garner "made the statement that he didn't care who or what I paid as long as it came out of my $5 an hour." *Id*.

In this record there is no substantive testimony by anyone of an agreement between Garner and Shoemaker by which Garner would pay Shoemaker for ordering nursing services for Garner's business. Chandler was not present when an alleged conspiracy was discussed. The only persons present at the time in question were Garner and Shoemaker, and no evidence was presented by them of any such agreement. Even after Chandler began working as a cooperating individual" for the government and went to visit Garner with a concealed recording device on his body and attempted to bring out of Garner an admission of the alleged "deal" between Garner and Shoemaker, Garner acknowledged no such "deal," and there were no actions on Garner's part to carry out an alleged "deal."

To substantiate a conspiracy, there must be an agreement between two or more persons to commit an unlawful act and also an overt act to carry out the conspiracy. *See United States v.*

*Williams*, 474 F.2d 1047, 1047 (5th Cir. 1983). The only testimony about the second alleged conspiracy is from Chandler, who said that Shoemaker said what Garner said. The necessary evidence to substantiate the existence of a conspiracy was simply not met. Further, no *Bourjaily* findings were made or asked to be made prior to the prosecution eliciting this testimony from Chandler. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). The evidence of the allegations of a conspiracy in Counts One and Four are totally lacking, and the defendants' motions for a judgment of acquittal are granted on these counts.

Therefore, the verdicts on Counts One and Four are vacated and a judgment of acquittal entered as to both Garner and Shoemaker.

### Count Two:        18 U.S.C. § 666

As discussed above, the evidence required by the statute did not show that Chandler was an agent of Tri-Lakes, nor did it show he had the authority to control nursing staffing hours, and had no authority to order the payments owed to Guardian Angel to be paid in a "timely manner,"[6] if indeed being paid in a timely manner is unlawful.

The motion for acquittal on Count Two is therefore granted.

### Count Three:    18 U.S.C. § 666

Count Three charges Shoemaker under § 666 with soliciting money to influence the ordering of nursing services from Guardian Angel and the timely payment of services. Shoemaker, as CEO of Tri-Lakes, was an agent of the hospital for purposes of § 666 since through his position he could bind the hospital and its funds, contrary to Chandler as discussed

---

[6] Count Two charges Chandler's influence in getting Guardian Angel paid in a "timely manner," was a violation of § 666.

above; however, Shoemaker was not shown to have chosen the called nursing staffing companies, and there is no evidence that he influenced anyone else to do so.

The gist of this count is, however, that Shoemaker accepted or solicited money, not that he actually increased any business for Guardian Angel. *See* 18 U.S.C. § 666(a)(B). There is testimony that Shoemaker did solicit money from Chandler and that Chandler paid him money. Therefore, viewing the evidence in the light most favorable to the verdict and deciding whether a rational jury could have found all elements proven beyond a reasonable doubt, the motion for a judgment of acquittal on Count Three is denied.

### Count Five:    18 U.S.C. § 1320a-7b(3)(B)

Count Five charges that Garner violated 18 U.S.C. § 1320a-7b(3)(B) by paying Chandler a kickback for every nursing service hour Garner's company worked at Tri-Lakes and by agreeing to pay Shoemaker to order nursing services for Garner's company.

It is undisputed that Garner's company provided competent nursing services for each hour it got paid. Moreover, Tri-Lakes ended up owing Garner for provided nurses which Tri-Lakes never paid for. In addition, as discussed above, in order to sustain a conviction under § 1320a, the evidence must show that the person receiving the alleged bribe, here Chandler, was a relevant decision maker who had authority to act for the institution in the business actions at issue in the case. *Miles*, 360 F.3d at 480-81. Chandler was not shown to be a relevant decision maker with respect to ordering nursing services at Tri-Lakes, as discussed above, and was not shown to have controlled those who were, to which all the supervisors testified.

For these reasons, the defendant's motion for judgment of acquittal is granted as to Count Five.

**Other Arguments**

There are several other grounds put forth by Defendant Garner in arguing for a judgment of acquittal and a new trial not analyzed in this opinion, including but not limited to: pre-judicial withholding of *Brady* material until after the trial started; alleged serious misstatements of fact testified to by government agents before the grand jury; questioning of Garner by government agents after an indictment had been drawn up against him without advising him he was a target, and even advising him that he was not a target; whether the motion for a severance should have been granted since only four counts of the fourteen count indictment involved Garner and Shoemaker jointly; and other alleged acts by the government charged by the defendants as prejudicial to defendants. Since the verdicts of the counts are ordered dismissed for other reasons of law, it will not be necessary to rule on those allegations at this time.

**Remaining Counts**

The motions for acquittal as to the remaining counts are denied.

**Defendants' Motions for a New Trial**

Standard of Review

"If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination." Fed. R. Crim. P. 29(d)(1). Rule 33 of the Federal Rules of Criminal Procedure permits the district court to vacate judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "These 'interests of justice' may be based on the trial judge's evaluation of witnesses and weighing of the evidence." *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir.

1997) (citing *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982)). "The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005) (quoting *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997)). "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (citing *United States v. Rasco*, 123 F.3d 222, 229 (5th Cir. 1997)).

### Jury Instructions

Defendant Garner argues that a new trial is warranted due to the refusal of the court to grant Jury Instruction D-19, requested by Defendant and objected to by the government, which objection the court sustained.

Jury Instruction D-19 pertained to Count Five of the superseding indictment, charging Garner with Healthcare Fraud under section 1320a-7b. The proposed instruction included the following:

> In order to sustain its burden of proof under the statute, the government must prove beyond a reasonable doubt each of the following:
>
> 1) that Lee Garner knowingly and willfully made payments or offered to make payments to David Chandler; 2) for the purpose of inducing David Chandler; 3) to recommend to Ray Shoemaker that Tri-Lakes purchase services from Guardian Angel and On-Call Staffing; 4) that could be paid for by a Federal healthcare program; **5) David Chandler had authority as a relevant decision maker to direct Tri-Lakes' business to Guardian Angel and On-Call Staffing;** and 6) that the payments by Lee Garner are not protected from prosecution by one of the statutory exceptions, explained elsewhere in these instructions.

Based on the Fifth Circuit's ruling on section 1320a-7b in *Miles*, 360 F.3d at 480, the jury should have been instructed that the government must prove Chandler had authority as a relevant decision maker to order nursing services. This error of sustaining the government's objection to

19

the instruction substantially violated Defendant Garner's rights. Defendant Shoemaker's rights were also substantially violated by the exclusion of the instruction, since also he was charged with conspiracy to violate the healthcare fraud statute. A new trial would be warranted on this ground had the motions for acquittal not been granted.

As to Counts One, Two, and Three, the jury was insufficiently instructed on the definition of "agent," as that term has been defined by the statute and interpreted by the subsequent case law in this circuit, including the *Phillips* case, 219 F.3d 404 (5th Cir. 2000), leaving the jury to be required to surmise and guess what acts are necessary to constitute an agent under the statute. That failure was prejudicial to both Defendants. Consequently, a new trial would be necessary to properly instruct the jury on this important issue on Counts One, Two, and Three.

For these reasons, assuming, *arguendo*, had the court not found Defendants' Motions for Judgment of Acquittal well taken on the relevant counts, the court would order a new trial for the reasons set forth.

As to the remaining counts, the court finds there was no adverse error that substantially affected Shoemaker's rights and does not order a new trial on those counts.

## Conclusion

Defendant Garner's motion for judgment of acquittal is GRANTED on Counts One, Two, Four and Five. Defendant Shoemaker's motion for judgment of acquittal is GRANTED on Counts One and Four, and DENIED on the remaining counts. For the foregoing reasons, the court would grant a new trial as to Garner on Counts One, Two, Four, and Five and as to Shoemaker on Counts One and Four had it not determined that Defendants' motions for judgment of acquittal were meritorious on these counts. A new trial is ordered as to Shoemaker

on Count Three.  A separate order in accord with this opinion shall issue this day.

**SO ORDERED AND ADJUDGED**, this the 23rd day of August, 2012.


  /s/ Neal B. Biggers
**NEAL B. BIGGERS**
**UNITED STATES DISTRICT JUDGE**