# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**UNITED STATES OF AMERICA**

**V.**  CASE NO.: 2:11-CR-00038-NBB-DAS

**EARNEST LEVI GARNER, JR.,**
a.k.a. "LEE GARNER" and
**RAYMOND LAMONT SHOEMAKER,**
a.k.a. "RAY SHOEMAKER"  **DEFENDANTS**

## MEMORANDUM OPINION

This case comes before the trial court *sua sponte*, with the court knowing that the procedural posture of the case is unusual. After further consideration of the motions made by the defendants herein alleging constitutional and statutory violations on the part of the government at the trial hereof, the court concludes that it was remiss by not ruling on those issues raised by the defendants in their motions for a new trial; and therefore, the appellate court was not afforded the opportunity to rule on those issues on appeal. The trial court is aware of one instance in which the Supreme Court disallowed a district court's grant of a new trial after appeal; however, that case is distinguishable from the present case. In *United States v. Smith*, the district court initially considered all grounds raised in defendant's motion for new trial and denied relief, and that denial was affirmed by the appellate court. 331 U.S. 469, 471 (1947). The district court subsequently issued an order granting the defendant a new trial and, as noted by the Court:

> It was accompanied by a 'memorandum' reciting the history of the case and that "This Court, while the appeal was pending, reconsidered the grounds urged by the defendant in support of his motion for a new trial. It is our opinion upon this reconsideration that in the interest of justice a new trial should be granted the defendant." It assigned no more particular ground for the order.

*Id*. The Supreme Court ultimately concluded the order to be improper. *Id*. Unlike the district court in *Smith*, this Court specifies grounds, *infra*, which were not previously considered in its initial ruling and discusses reasons as to why relief is warranted on these grounds. Moreover, this Court is not changing its position, as in *Smith*, but instead is considering claims of constitutional violations raised in defendants' timely briefs during and after trial.

The Court, in its previous ruling, did grant motions for new trials on the conspiracy counts herein but in doing so relied solely on its opinion at the time concerning the agency question as to whether Michael David Chandler, as member of a five-member board, was an agent of the hospital as required by the instruction of law in this case. That reliance by the trial court was ruled misplaced by the appellate court and is the law of this case, and the appellate ruling shall be strictly adhered to.

This court is of the opinion that the defendants deserve in the interests of justice a ruling on the constitutional *Brady* violation claims raised by them in their post trial motions because in granting the motion for a new trial previously, the trial court placed full reliance on the agency question and did not grant the defendants a ruling on the *Brady* claims. In an area of such clear and settled law, this court is of the opinion that the *Brady* claims must be treated by this court, and to refuse to rule on these constitutional claims now would be a denial of due process and contrary to the interests of justice. The government in its brief to the Fifth Circuit did not even address the *Brady* exculpatory and statutory violation claims, ostensibly since the trial court had not ruled on them.

The government prosecutors have an affirmative duty as described in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Kyles v. Whitley*, 514 U.S. 419 (1995), to advise the defendants of the

existence of and to turn over to them all exculpatory evidence relating to the defendants and that includes all evidence which can be used by the defendants for impeachment purposes of government witnesses and in planning their defense strategies. To establish a *Brady* violation, the defendant must prove that (1) the prosecution suppressed evidence, (2) it was favorable to the defendant, and (3) it was material either as direct or impeaching evidence. *United States v. Brown*, 650 F.3d 581, 587-88 (5th Cir. 2011) (citing *United States v. Skilling*, 554 F.3d 529, 574 (2009) *vacated in part on other grounds*, 561 U.S. 358 (2010)); *see also United States v. Campagnuolo*, 592 F.2d 852, 859 (5th Cir. 1979). This is basic, settled law. But the government in this case failed to follow the mandates of these cases.[1] The government's main witness - Chandler, the man who originated the conspiracy for which these defendants were prosecuted - was, at the time of the trial, under a twenty-six count criminal indictment and had been for approximately one-year, the substance of which indictment was kept secret from the defendants herein until Chandler had taken the stand during the trial as the main government witness and finished his direct testimony. It was only then that the government made a motion to a trial judge in another courthouse of this court to unseal the indictment, which the government had asked to be sealed over a year earlier. The defendants herein had been under indictment over one year, and the deadline for furnishing discovery material to the defendants had passed ten months before the theretofore sealed indictment was turned over to defense counsel less than one hour before they were to begin the cross-examination of Chandler. The twenty-six count indictment

---

[1] The government cited *United States v. Jaramillo*, 42 F.3d 920 (5th Cir. 1995), to the trial court setting out the elements to prove a *Brady* violation, but that case never mentioned *Brady*. It addresses a claim of newly discovery evidence, and the case has also been abrogated by later case law.

3

of Chandler was filed in this court in May 2010 and was sealed at the motion of the prosecutors and remained sealed until February 2012. The defendants were indicted on the charges herein in February 2011 and went to trial in February 2012. All this time - May 2010 until February 2012 - the government kept the indictment of Chandler under seal, and the defendants were wholly without any knowledge whatsoever of the substance of these twenty-six counts pending against Chandler. The government's decision not to unseal the indictment until February 2012 was in direct violation of *Brady* and the scheduling order entered by the Magistrate Judge in this case that required all discovery be completed by April 4, 2011. A motion was made by the government prosecutors to unseal the indictment in February 2012, only after Chandler had testified on behalf of the government against the defendants herein. This *Brady* material obviously would have been useful in planning a defense and planning a cross-examination of the main witness for the government; yet, its existence was not revealed until the trial was in progress and Chandler had already testified on direct. *See generally United States v. Bagley,* 473 U.S. 667, 682 (stating that the government's failure to disclose *Brady* material may impair the adversary process by causing the defendant to abandon defenses, trial strategies, or lines of independent investigation he might otherwise have pursued).

To casually throw out to the defendants an indictment under seal for over a year against the government's star witness only after that witness had finished his direct testimony does not meet the mandates of *Brady* or *Kyles*. Defendants must receive the material in time to put it to effective use at trial. As the Fifth Circuit in *Campagnuolo* observed:

> Courts have suggested that in some circumstances the 'appropriate time' for discovery is prior to trial: It should be obvious to anyone involved with criminal trials that exculpatory information may come too late if it is only given at trial, and

that the effective implementation of *Brady v. Maryland* must therefore require earlier production in at least some situations.

*Campagnuolo*, 592 F.2d at 859 (citations omitted) (while noting that *Brady* was never intended to create pretrial remedies).

The government failed to show this indictment to the defendants even though the case against these defendants had been pending for approximately a year and the government had possession of the Chandler indictment all that time. The government then told the defendants about this *Brady* material only after the trial was well in progress. The trial court herein was taken aback by this action and though at the time denied the motion for a mistrial or dismissal of the charges, seriously questioned the prosecutors about this failure to divulge exculpatory material. The colloquy between the trial court and prosecutor was as follows:

> **THE COURT**: There's a matter that's been on my mind overnight. I'd like to get an explanation from the prosecution why this indictment against your witness has been sealed all this time until yesterday. It was not handed over to the defense counsel [until] during the trial yesterday.
>
> **PROSECUTOR:** Your Honor, it's been sealed ever since it was returned. Later on, the defendant –
>
> **THE COURT:** Why? That's the question. You asked it be sealed.
>
> **PROSECUTOR:** Yes, Your Honor, because –
>
> **THE COURT:** Why -- why was it not unsealed to give to them as possible –
>
> **PROSECUTOR:** It was –
>
> **THE COURT:** -- credibility of cross-examination?

| | |
|---|---|
| **PROSECUTOR:** | Your Honor, we moved to unseal it to give it to the defense. We didn't get it unsealed until yesterday. We gave it to the defense as soon as we did.[2] |
| **THE COURT:** | Well, that's just the very point. Why did you wait until yesterday to do it? |
| **PROSECUTOR:** | Your Honor, it simply didn't occur to us to do it last week or the week before. |
| **THE COURT:** | All right. It never occurred to you that's - that indictment would be - that indictment against your star witness could be used as evidence favorable to the defendants? |
| **PROSECUTOR:** | Well, Your Honor, I know the defense may try to impeach him, but he's never seen it. He'd never seen this indictment. |

While the government stated that the witness had not seen the indictment against him, Chandler testified on cross-examination that he had, in fact, reviewed the document:

| | |
|---|---|
| **COUNSEL:** | Well, before July the 13th of 2010, did you know that this indictment had been returned against you? |
| **CHANDLER:** | No, sir, I had not. |
| **COUNSEL:** | When did you first learn about this indictment? |
| **CHANDLER:** | On July the 13th. |
| **COUNSEL:** | Mr. Spillers and Mr. Dabbs or someone told you about this indictment, right? |
| **CHANDLER:** | Yes, sir. |
| **COUNSEL:** | And have you ever -- have you read this indictment or looked at it? |
| **CHANDLER:** | Yes, sir, I have. |

---

[2] The docket shows the motion to unseal the indictment was not filed until the "yesterday" that the prosecutor is referring to.

| | |
|---|---|
| **COUNSEL:** | When did you see it? |
| **CHANDLER:** | In the last few days. |
| **COUNSEL:** | Okay. Before today at noon, though, or before some time today, right? |
| **CHANDLER:** | Yes. |
| **COUNSEL:** | All right. Was it given to you? Who showed it to you? |
| **CHANDLER:** | It was, I believe, my attorney. |
| **COUNSEL:** | Mr. Eastland out here? |
| **CHANDLER:** | Yes, sir. |

The trial court after this exchange did overrule the motion for mistrial and allowed the defendants extra time to cross-examine Chandler. However, that was small and inadequate consolation for the defendants not being able to have the twenty-six count indictment for trial preparation purposes well prior to trial. The indictment was over a year old at the time it was turned over to the defendants and had been sealed at the government's request the entire time. There was no reasonable explanation given by the government as to why it did not show the indictment to the defendants. This, in the court's opinion, was a clear and material due process violation. On February 21, 2012, Chandler started direct examination by the government (the indictment was still sealed at this point). On February 22, 2012, the next day, Chandler retook the stand for continued direct examination by the government, and that same morning the government filed a motion before another trial judge to unseal the indictment. The indictment was unsealed at 12:31 p.m. This court reconvened at 1:15 p.m., and the government tendered

Chandler for cross-examination. The government then advised the defendants of the heretofore sealed indictment shortly before Chandler was turned over to them for cross-examination.

The government was obviously aware that the defendants were entitled to know about the sealed indictment as shown by turning it over to the defendants shortly before Chandler was tendered for cross-examination. The problem with the government's actions - a failure of actions - was in willfully keeping the indictment sealed for over a year while the defendants herein were awaiting trial and not unsealing it until the government's star witness had completed his direct examination. The government pleads no harm, saying the defendants were given the indictment before Chandler was turned over to them for cross-examination, but that hardly compensates for a blatant disregard for the constitutional requirements of *Brady* and the order of the Court for the government to turn over all other discovery material to the defendants by April 4, 2011. These actions by the government deprived the defendants of their right to plan their defense strategies with full knowledge of all *Brady* material. The defendants herein could have used the sealed indictment and the fact that no prosecution of it had occurred for over a year in planning defense strategies such as circumstantial evidence of promises not to prosecute, etc.

Other constitutional issues arose during this trial and were raised by the defendants in their motions for new trial but not ruled on by the trial court for the reasons heretofore stated and its misplaced reliance wholly on the agency issue. Other issues raised by the defendants that were at issue and are at issue, but not ruled on by the court for the above stated reasons include the following:

The prosecution failed to provide to defendants a false statement made by Chandler under oath prior to trial. Chandler made a statement to a trial judge when he was being questioned in a

plea colloquy about charges unrelated to this case, and he was asked whether any other promises had been made to him that were not in the plea agreement, and he replied in the negative; however, he later admitted that this statement of no other promises having been made to him was a false statement and that, in fact, a very important promise had been made to him, that if he would testify against Garner and Shoemaker, the government would not prosecute anyone involving these charges, including Chandler's wife. The government knew about this promise and knew that Chandler testified falsely under oath when he stated no other promises had been made to him. This material for impeachment purposes was not provided to the defendants in pretrial discovery.

The government also failed to provide to the defendants herein copies of interview forms (known as 1023s) made by FBI agents when Chandler was questioned as a confidential human source (CHS). Such 1023s are required to be made by the agents and to be turned over to the defense under the rules of discovery but they were not done so until trial, in violation of the Court's scheduling order, and in some instances 1023s were never provided. Regarding these omissions in the discovery material, the government stated:

> **PROSECUTOR** : It's possible that we decided to turn them over, made that decision and they never made it into a disk or something. It could be possible on both sides. We do remember saying, yeah, let's turn them over.
> . . .
> We designated them to go out on our end, but they never went out. We thought they had. We made a search and found out they had not been scanned in on the hard drive data and gone out to defense counsel.

The government kept from the defendants the fact that although Chandler had a twenty-six count indictment pending against him for well over a year, but had never been prosecuted for

9

it (and still has not), and that he was allowed to waive indictment and plead to an information of two non-indicted charges approximately two months before the prosecution of the defendants herein.

Although Chandler was the organizer and main actor in the conspiracies (he went to Defendant Garner and asked to be paid money to get the bills paid by the hospital), he not only has never been prosecuted for these acts, he has never even been charged. This information could have been significant in arriving at defense strategies relating to promises having been made to Chandler. In *Giglio v. United States*, the court determined:

> [Where] the Government's case depended almost entirely on [a witness's] testimony; without it there could have been no indictment and no evidence to carry the case to the jury . . . credibility [of the] witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know it.

405 U.S. 150, 154-55 (1972). Cumulatively, the absence of any prosecution of Chandler on the twenty-six count indictment; the statement on the record by the prosecution that there was "no objection to probation" on the information charges pled to by Chandler; and no prosecution with Garner and Shoemaker on the conspiracy charges herein would certainly have been valuable in attacking Chandler's credibility and laying out defense strategies.

Because of the flagrant violations of constitutional requirements of *Brady* and *Kyles*, and the cumulative effect of other materials to which the defendants were entitled for use in preparing their defense strategies and in impeachment of the government's main witness, the Court finds that the defendants are entitled to a new trial on the conspiracy charges on which Chandler was the primary witness, and to do otherwise would be a denial of due process law to the defendants.

*See United States v. Sipe*, 388 F.3d 471 (5th Cir. 2004) (finding the cumulative effect of discovery violations warranted a new trial).

The original trial of the thirteen count indictment involving these defendants herein took approximately nine days; however, to try the five conspiracy charges only, which were the subject of Chandler's testimony, the court estimates would be only a three to four-day trial.

As pointed out in the case of *Bousley v. United States*, a criminal defendant can be guilty in fact, but not guilty in law. *See generally* 523 U.S. 614 (1998). It is the opinion of this trial judge that before sentencing a man to prison he should be guilty in both respects and in this court's opinion these defendants have been denied due process by the actions of the government and failure of the trial court to rule on the constitutional and statutory violation claims pleaded by the defendants. To grant the defendants herein a new trial on the five conspiracy counts in which *Brady* and statutory material was flagrantly withheld from the defendants in violation of the mandates of *Brady* and the deadline set by the court, but now available to them, and the agency issue no longer relevant since ruled on by the appellate court in its thorough decision, would result in due process provided to these defendants.

For these reasons, a new trial is warranted as to Defendant Garner on Counts One, Two Four, and Five, and as to Defendant Shoemaker on Counts One, Three, and Four. A separate order in accord with this opinion shall issue this day.

**SO ORDERED AND ADJUDGED**, this, the 15th day of July, 2014.

    /s/ Neal Biggers
**NEAL B. BIGGERS**
**UNITED STATES DISTRICT JUDGE**